# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Adams*, 2017 IL App (3d) 170472

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SPENCER C. ADAMS, Petitioner-Appellee, and LISA A. ADAMS, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-17-0472 |
| Filed | December 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 14-D-162; the Hon. Robert C. Marsaglia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jacqueline M. Aldrich, of Aldrich & Siedlarz Law, P.C., of Lombard, for appellant.<br><br>James M. Durkee, of Malmquist, Geiger & Durkee, LLC, of Morris, for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justice Lytton concurred in the judgment and opinion. |

¶ 1     Respondent mother appealed from a trial court order granting petitioner father's motion to modify parenting time and granting the father the majority of the parenting time.

¶ 2                                              FACTS

¶ 3     The petitioner father, Spencer Adams, and the respondent mother, Lisa Adams, were married on May 31, 2003. They had two children during the marriage. A judgment for dissolution of marriage was entered on April 2, 2015, which incorporated the parties' marital settlement agreement and a joint parenting agreement (JPA). The judgment provided that the mother and the father were to have joint legal custody. The mother was to have primary physical and residential custody, and the father was to have secondary physical custody, referred to as visitation. The mother was to have parenting time with the children from 6 p.m. on Sunday until 6 p.m. on Thursday and the father from Thursday to Sunday for the first three weeks of each month. During the fourth week, the mother also had the weekend, subject to visitation with the father on Thursday and the following Monday. The JPA provided that the father would provide all transportation for parenting time exchanges, unless the mother moved more than 75 miles away from Verona, Illinois. In that case, the mother was responsible for transporting the children to within 75 miles of Verona. The provision was modifiable upon a substantial change in circumstances, including if the father moved away from Verona.

¶ 4     On August 10, 2016, the father filed a petition to adjudicate indirect civil contempt and an emergency petition to temporarily modify parenting time and a petition to modify parenting time. The father's petition, using the term "parenting time" instead of physical custody and visitation, sought relief under the 2016 amendments to the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/600(e), 602.7 (West 2016)). Both petitions alleged that the mother moved the children 324 miles away without the consent of the father and failed to give notice of the relocation and failed to file a petition seeking relocation in accordance with section 609.2 of the Act (750 ILCS 5/609.2 (West 2016)). It also alleged that the mother enrolled the children in a school in Belleville without consulting with the father. The father sought a modification of the parenting time, seeking majority parenting time. The father also filed a petition on August 19, 2016, for a temporary restraining order, making the same allegations.

¶ 5     The motions were heard on August 19 and 24, 2016. The mother testified that prior to the dissolution, she lived in a home in Verona with the father, their two daughters, and the mother's parents. Just after the dissolution judgment was entered, on April 24, 2015, the mother moved with the two girls to Palatine. After the mother moved, the father would come and pick the children up in Palatine to exercise his visitation. In October 2015, the father moved to Joliet, and then he moved to Ingleside in May 2016. The father did not advise the mother of either of these moves.

¶ 6     The mother testified that as of July 2016 she lived with her daughters, her boyfriend, and their son in Palatine. The Chicago office of her employer was closing, and she was offered a job opportunity in St. Louis through her employment that paid more. Her boyfriend worked for the same company and also got a new position in Belleville. He had been in the St. Louis office since April or May of 2016. The mother had been doing some part-time work for the St. Louis office since the beginning of June but was waiting for a new manager in the Chicago office so

that she could stay in Chicago. The mother testified that she sent notice to the father on July 29, 2016, that she was moving three days later, on August 1, 2016. The mother testified that she had received the job offer about three weeks prior to the notice sent to the father but she did not inform him of the move until after she had confirmation of the job on July 27. She enrolled the older daughter in private school in Belleville, without the consent of the father, although she contacted him and he told her who to list as emergency contacts.

¶ 7 The father testified that he regularly exercised his visitation, including three weeks in the summer. He objected to the mother moving the children to Belleville. Both parents acknowledged, though, that the parenting agreement would change when the older daughter started school in August 2016.

¶ 8 The trial court found that the situation was not an emergency, so it denied the petition for contempt, the emergency petition to modify parenting time, and the petition for a temporary restraining order. The trial court set a hearing date on the petition to modify parenting time.

¶ 9 A hearing was held on May 1, 2017, on the father's alternative requests for relief on the petition to modify parenting time. Primarily, the father sought a change of majority parenting time. Alternatively, the father sought to enjoin the mother from moving to Belleville. The mother never filed a motion to relocate. At the hearing, the mother testified consistently with her earlier testimony. Additionally, the lease application that she signed for a house in Belleville was admitted into evidence, signed by the mother on June 18, 2016, as a coapplicant with her boyfriend, with a move-in date of August 1, 2016. The lease was signed by both the mother and the boyfriend on July 2, 2016. The mother testified that her boyfriend was going to live in the house but she did not intend to move her daughters to Belleville when she cosigned the lease.

¶ 10 The mother's sister, Chelsea Lynn May, testified regarding text conversations that she had with the mother wherein the mother said on June 12, 2016, that she was moving, but the house would not be ready until August 1. Chelsea testified to another conversation on July 1, where the mother said she was taking care of arrangements for work and the upcoming move.

¶ 11 The father also testified consistently with the earlier hearing. He testified that he stayed in the marital home in Verona until October 2015, at which time he moved in with his ailing mother in Joliet. He stayed there until he got married in May 2016, moving at that time to Ingleside with his new wife, which was also closer to his daughters in Palatine. The father testified that he asked the mother in mid- to late June, and two other times prior to August 1, whether she was moving and she responded that she was not. When the children visit their father, they also can see other family members, including grandparents, aunts, uncles, and cousins of the father's new wife.

¶ 12 In ruling on the petition to modify parenting time due to the mother's relocation, the trial court noted that the mother never filed a motion for leave to relocate, but it reviewed the section 609.2 factors (750 ILCS 5/609.2 (West 2016)), which are the codified *Eckert* factors (*In re Marriage of Eckert*, 119 Ill. 2d 316, 325-27 (1988)), and concluded that it would not have granted a petition to relocate. The trial court found that the mother moved with her significant other because of a job relocation. However, the trial court also found that the mother was less than truthful about the circumstances surrounding her move. The testimony indicated that the mother knew in early June that she was going to move, and she purposely hid that fact from the father. The father's visitation with his daughters, which was three weekends a month prior to the mother's relocation, was not feasible with the relocation. An 11-hour car

ride every visitation weekend was not a reasonable long-term solution, especially as the children got older, and the move was not in the children's best interests. The mother, though, had already been in Belleville for 10 months at the time of the hearing, so the trial court did not order her to move back. The trial court granted the father's petition to modify parenting time, granting him a majority of the parenting time and granting the mother visitation on every long weekend and five weeks in the summer. The trial court acknowledged the half-siblings that lived with the mother but found that the daughters' relationship with their father was more important under the circumstances of the case. The mother appealed.

¶ 13                                        ANALYSIS

¶ 14       As an initial matter, the mother argues[1] that the issue of relocation was not properly before the trial court because the statute restricting relocation within the state (750 ILCS 5/609.2 (West 2016)) was not the law at the time the divorce decree was entered in 2015 and the law at the time that the divorce decree only restricted removal outside of Illinois (750 ILCS 5/609 (West 2014)). However, the current version of the Act, and its amendments, applies to all pending proceedings where a judgment has yet to be entered. See 750 ILCS 5/801 (West 2016); *In re Marriage of Smith*, 162 Ill. App. 3d 792, 795 (1987). Thus, the amended relocation statute, which went into effect on January 1, 2016, applies since the mother relocated in 2016, the father's petition challenging the relocation was filed in 2016, and the final hearing was not held until 2017.

¶ 15       Under the amended statute, a parent who has been allocated a majority of parenting time may seek to relocate, but must file a petition with the court seeking permission to relocate if the non-relocating parent objects to the relocation, fails to sign the notice required by the Act, or if the parents cannot agree on a modification to the parenting plan. 750 ILCS 5/609.2(f) (West 2016). The mother relocated without seeking permission from the court. To the extent that the mother argues that she was unaware of the amended statute and its notification requirement, we find that she was on notice that the amended statute applied, at the latest, when the father filed his petitions on August 10, 2016.

¶ 16       The mother also argues that the trial court's order modifying parenting time was void because there was no proper pleading and notice, violating the mother's right to due process. The mother argues that the May 2017 hearings were relocation hearings and she was not given notice that there would be a modification hearing. A review of the proceedings indicates that the father initially sought emergency relief; he sought to prevent the relocation of the children, and he sought temporary modification of the parties' parenting time. But his petition also sought a permanent change in parenting time. After the trial court denied the emergency relief, the father went forward with his petition for a permanent change in parenting time. There was no counter-petition filed by the mother seeking permission to relocate. Since the father's pleadings clearly indicated that he was seeking a modification of parenting time and the mother appeared and participated in the modification hearing, we find that there was no

---

[1]The mother also argues that the joint parenting agreement (JPA) should control and she complied with the JPA by not moving outside of Illinois and by providing transportation to the new exchange. We agree with the trial court, though, that the 75-mile language in the JPA was not a relocation agreement but rather an agreement limited to transportation. Since both parties have moved since the JPA was entered, any agreement as to who would transport in the event of a move was rendered moot.

- 4 -

violation of due process and the modification proceeding was properly before the trial court. See 735 ILCS 5/2-201 (West 2016) (an action is properly commenced in the trial court by the filing of a pleading).

¶ 17 The mother argues that the trial court's order modifying parenting time was punitive in nature because the mother relocated without permission and, as such, was an abuse of discretion. Specifically, the mother argues that the trial court failed to properly consider the best interest factors in making its decision modifying the parties' parenting time. The mother contends that the father would still be uninvolved with the children's school, he would miss their events because of work, and he would "pawn" them off on his former in-laws. Also, the father lives in Ingleside, not Palatine, so the children would have to change schools, neighborhoods, friends, and babysitters no matter which parent they lived with.

¶ 18 Parenting time may be modified upon a showing of a change in circumstances such that modification would serve the best interests of the children. Pub. Act 99-763 (eff. Jan. 1, 2017) (amending 750 ILCS 5/610.5(a)); *In re Marriage of Rogers*, 2015 IL App (4th) 140765, ¶ 57 (stating the modification standard under the pre-2016 version of the Act (750 ILCS 5/610(b) (West 2014))). Parenting time may be modified at any time, upon the showing of changed circumstances. 750 ILCS 5/610.5(a) (West 2016). Under the amended provisions of the Act, it was not necessary for the father to show serious endangerment because he was only seeking to modify parenting time; he already had joint parental decisionmaking responsibilities pursuant to the parties' agreed joint legal custody in the JPA.

¶ 19 For purposes of section 610.5 of the Act, a parent's relocation constitutes a substantial change in circumstances. 750 ILCS 5/609.2(a) (West 2016). Relocation without first obtaining leave of court is, by itself, not a sufficient ground to modify parenting time. See *Mathey v. Mathey*, 1 Ill. App. 3d 1008 (1971). The question in a modification proceeding is always what is in the best interests of the children. We are reviewing the trial court's conclusion that there was a substantial change in circumstances that warranted a modification of parenting time in order to serve the best interests of the children, and we will uphold it unless it is against the manifest weight of the evidence. *In re Marriage of Bates*, 212 Ill. 2d 489, 515-16 (2004).

¶ 20 When determining the best interests of the children in relocation actions, courts traditionally consider the *Eckert* factors, which have been codified in the relocation statute of the Act. *In re Marriage of Eckert*, 119 Ill. 2d at 325-27; 750 ILCS 5/609.2 (West 2016). When considering the modification of parenting time, courts consider the best interest factors delineated in section 602.7 of the Act. 750 ILCS 5/602.7 (West 2016). The trial court in this case specifically discussed the relocation factors.

¶ 21 The mother describes the section 609.2 factors as additional factors. However, it is clear from reading of the statutes that there is overlap among the best interest factors relevant to relocation and the best interest factors relevant to the allocation of parenting time. Also, the mother's relocation was itself the relevant fact in the trial court's determination of the best interests of the children in the allocation of parenting time. It was the relocation that precipitated the substantial change in circumstances. Although the trial court must consider all relevant facts, it is not required to make an explicit finding or reference to each factor. *In re Custody of G.L.*, 2017 IL App (1st) 163171.

¶ 22 The trial court specifically discussed the relocation factors and concluded that a relocation petition would not have been granted, which also specifically addressed many of the best interest factors. Notably, the trial court found that the father had a significant visitation

schedule with the children prior to the relocation. In fact, the evidence presented indicated that, under the dissolution judgment, the father had the children three days of the week, while the mother had them the other four. The trial court considered the new distance between the parties' residences and the difficulty in transportation on a routine basis. Educational opportunities were relatively equal in both locations. The trial court also found that the children had a close relationship with extended family in the father's location and none in the mother's location. It acknowledged the relationship between the children and their half-siblings that resided with the mother but found that the relationship with the father was more important. The mother argues that the trial court overlooked the willingness and ability of each parent to place the needs of the children ahead of his or her own. However, the trial court's findings with respect to the mother's failure to seek permission for the relocation and failure to suggest a reasonable parenting plan point to the fact that the trial court considered the mother's willingness and ability with respect to the importance of the children's needs. We find that the trial court's decision, that the relocation was not in the children's best interests and that the father met his burden of showing that the relocation amounted to a change in circumstances that necessitated a modification of parenting time to serve the best interests of the children, was not against the manifest weight of the evidence.

¶ 23                                                    CONCLUSION

¶ 24           The judgment of the circuit court of Grundy County is affirmed.

¶ 25           Affirmed.